```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER WASHINGTON           :      CIVIL ACTION
                                 :
          v.                     :
                                 :
LEO HANSHAW, et al.              :      NO. 11-254
```

MEMORANDUM

McLaughlin, J.                                          May 11, 2012

      This case arises from the plaintiff's arrest on February 23, 2005.  The plaintiff was stopped by four Upper Darby Township police officers looking for a robbery suspect and taken into custody after the officers could not confirm his identity.  He alleges that the officers lacked probable cause to arrest him and brings this suit against three of the officers[1] and Upper Darby Township.

      The defendants have filed a motion for summary judgment arguing that the individual officers are entitled to qualified immunity and that there is no evidence to support the Township's liability under <u>Monell</u>.  Because there are disputed issues of fact on whether probable cause existed to arrest the plaintiff and a lack of clarity about the customs and policies of Upper Darby, the Court will deny summary judgment.

---

[1] The plaintiff brings suit against Detective Leo Hanshaw, Detective William Kane, and Officer Steven O'Connor.

I.   Summary Judgment Record

The facts described here are undisputed unless otherwise noted.

On February 23, 2005, the plaintiff had just left a building at 34 North Keystone Street in Upper Darby, Pennsylvania when he was spotted by Officers Kane and Hanshaw, who were looking for a suspect in a series of armed robberies.  The officers believed that the suspect was in a building at 34 North Keystone and that he matched the plaintiff's general description.  Def. Br., Exs. A, B.  The officers called for backup and Officers O'Connor and Billie arrived.  Pl. Br., Ex. M (Hanshaw Dep.) at 32.

The plaintiff was approached by several of the officers, at least one of whom had his gun drawn.  Def. Br., Ex. E ("Pl. Dep.") at 10-11; Pl. Br., Ex. J (St. Suppression Hr'g 1/20/06) at 35.  He complied with the officers' order to lay on the ground, where the officers handcuffed him and patted him down.  Pl. Dep. at 13.  The plaintiff was helped to his feet, and another pat-down search of his clothing was conducted.  Id.

The officers then asked the plaintiff for ID and to identify himself.  Id. at 16.  He was also asked if he recognized a photograph of the robbery suspect.  Id.  The plaintiff told the officers he had no identification and provided a false name, birth date, and address.  Although the plaintiff insisted he

2

would be in their databases, the officers were unable to confirm the plaintiff's identity using the false name.  Pl. Dep. at 18; Pl. Br., Ex. K (Trial Tr. 5/4/06) at 24.

The officers decided to take him to police headquarters to determine his identity.  The reason for doing so is disputed by the parties.  According to the defendans, the officers could not rule out the possibility that the plaintiff was the robbery suspect.  Pl. Dep., Ex. M (Hanshaw Dep.) at 46; Ex. N (Kane Dep.) at 46.  But, at the plaintiff's eventual criminal trial, Officer Hanshaw testified that he realized after the plaintiff was handcuffed and helped to his feet that he was not the suspected robber.  Pl. Br., Ex. K (Trial Tr. 5/4/06) at 33.[2]  The plaintiff also overheard Officer Hanshaw tell Officer Kane that the plaintiff "obviously ain't the guy; don't you want to let him go?"  Pl. Dep. at 16.  According to the plaintiff, Officer Kane responded that they would "take him down and strip search him anyway."  Id. at 19.

The plaintiff was placed in Officer O'Connor's car and taken to the Upper Darby Police Headquarters.  Id. at 23.  During the ride to the police station, the plaintiff removed a plastic bag with eighteen packets of crack cocaine from the sleeve of his

---

[2] Officer Hanshaw testified in both a suppression hearing in the plaintiff's criminal case and in his deposition in this case that he was he was unsure whether the plaintiff was the robbery suspect.  Pl. Br., Ex. J (St. Suppression Hr'g 1/20/06) at 40; Ex. M (Hanshaw Dep.) at 47.

jacket and left them in the car.  Id. at 24.  Once at the station, he admitted to ownership of the drugs and to giving the officers a fake name.  Id. at 25-26.

The plaintiff was charged with possession and possession with intent to deliver a controlled substance, possession of drug paraphernalia, and providing false identification to law enforcement authorities.  He was found guilty of all charges and sentenced to 3 to 6 years imprisonment.  Def. Br., Ex. D at 1.

The state trial court judge denied the plaintiff's motion to suppress the drug evidence, finding that there was probable cause to arrest the plaintiff as part of the robbery investigation.  Def. Br., Ex. B.  The court relied on Officer Hanshaw's testimony at a suppression hearing that the officers were unable to determine if the plaintiff was the robbery suspect.  Id. at 3.  The court did not discuss Officer Hanshaw's testimony at trial that he knew the plaintiff was not the robbery suspect.

On appeal, the Pennsylvania Superior Court reversed the lower court and vacated the plaintiff's sentence.  Def. Br., Ex. C at 1.  The Superior Court held that there was not probable cause to arrest the plaintiff because Officer Hanshaw knew he was not the robbery suspect.  Id. at 3.  The court also held that probable cause was not created when the officers suspected the

4

plaintiff may have lied about his identity. The Pennsylvania statute which defines the crime of false identification to law enforcement requires that the false information be given "after being informed by a law enforcement officer . . . that the person is the subject of an official investigation of a violation of law." 18 Pa. Cons. Stat. § 4914. Because Officer Hanshaw realized that the plaintiff was not the sought after suspect before he was questioned, the plaintiff "could not have been informed that he was the subject of an official investigation for the simple reason that he was not." Def. Br., Ex. C at 5. The Superior Court held that the arrest was unlawful, suppressed the drugs, and ordered that the plaintiff be discharged. Id.

II. Discussion[3]

Section 1983 provides a remedy for any person who has been deprived of constitutional rights by someone acting under

---

[3] A party moving for summary judgment must show that there are no issues of material fact and that judgment is appropriate as a matter of law. Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court considers the evidence in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Sheridan v. NGK Metals Corp., 609 F.3d 239, 251 n.12 (3d Cir. 2010). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, which may be satisfied by showing that the party who bears the burden of proof lacks evidence to support his case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 250 (1986).

color of state law.[4]  Here the plaintiff alleges a violation of his Fourth Amendment right to be free from unreasonable seizure.[5]

    A.    <u>Qualified Immunity</u>

The individual defendants argue that they are entitled to qualified immunity.  Qualified immunity provides a defense for government officials "performing discretionary functions" so long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  To determine whether an officer is entitled to qualified immunity, the court must determine whether the conduct, taken in a light most favorable to the party asserting an injury, violated a constitutional right, and whether the constitutional right was clearly established. <u>Saucier v. Katz</u>, 533 U.S. 194, 201-02 (2001).  Even when the right is clearly established, an officer is entitled to qualified immunity if he reached a reasonable but

---

[2] The relevant part of the statute says: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

[5] The plaintiff has withdrawn his claim of malicious prosecution, so the Court will not address that issue. <u>See</u> ECF Docket No. 28.

6

mistaken conclusion that the law's requirements were met. Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995).

The Court begins with the first prong of the qualified immunity inquiry, whether a constitutional violation occurred. "The Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause." Rogers v. Powell, 120 F.3d 446, 452 (3d Cir. 1997). Probable cause exists when the objective facts available to the officers at the time could have created a reasonable belief that the individual has committed or is committing a criminal offense. Estate of Smith v. Marasco, 318 F.3d 497, 541 (3d Cir. 2003). The existence of probable cause is usually a question for the jury. Sarrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997).

There are disputed issues of material fact on whether the officers had probable cause to arrest the plaintiff. Officer Hanshaw testified at the plaintiff's criminal trial that he knew the plaintiff was not the robbery suspect, and the plaintiff testified that he overheard the officers discussing their belief that he was not the robbery suspect. If the officers knew the plaintiff was not the suspected robber, they lacked probable cause to arrest him in connection with that investigation.

The defendants argue that even if the officers knew that the plaintiff was not the man they were looking for, "they could hardly ignore the fact" that the plaintiff was "carrying no

7

identification and had given them a fake name." They argue that the "officers had ample reason to believe that there was probable cause to take him into investigative detention to determine what his actual identity was." Def. Br. at 10. The defendants cite no legal support for this proposition. They do not explain how inability to confirm the defendant's identity, once Hanshaw realized he was not the robbery suspect, could have created reasonable belief that he had committed or was committing a crime.[6] Estate of Smith, 318 F.3d at 541. The fact that the plaintiff was carrying illegal drugs and was wanted for a parole violation are irrelevant to the question of whether the facts known to the officers at the time of the arrest created probable cause. Estate of Smith, 318 F.3d at 541.

Therefore, when the evidence is considered in a light most favorable to the party asserting a constitutional violation, the officers may have violated the plaintiff's Fourth Amendment rights by arresting him without probable cause.

Moving to the second part of the qualified immunity inquiry, it is clearly established that the Fourth Amendment

---

[6] The defendants do not argue that the officers had probable cause to arrest the plaintiff for providing false information to law enforcement authorities. But the Court finds the Pennsylvian Superior Court reasoning persuasive. If the officers knew the plaintiff was not the robbery suspect, the plaintiff was not the subject of an official investigation and the Pennsylvania law prohibiting providing false identification to law enforcement did not apply. Def. Br., Ex. C at 5.

8

requires probable cause before making an arrest. <u>Papachristou v. City of Jacksonville</u>, 405 U.S. 156, 169 (1972); <u>Reedy v. Evanson</u>, 615 F.3d 197, 211 (3d Cir. 2010).  The defendants argue that they must be entitled to qualified immunity because a Pennsylvania state court found that probable cause existed to make the arrest.  The lower court decision, which was reversed on appeal, does not affect the state of the law.  Nor does it demonstrate that the officers acted reasonably but mistakenly.  The trial court did not consider Officer Hanshaw's trial testimony that he knew the plaintiff was not the robbery suspect.  If the officers knew the plaintiff was not the robbery suspect, and had no reason to suspect him of other crimes, it would not be objectively reasonable to believe they had probable cause to arrest the plaintiff.  <u>Orsatti</u>, 71 F.3d at 483-84.

Because there is a disputed issue of fact on whether the individual defendants violated the plaintiff's right to be free from unreasonable seizure, and this a clearly established constitutional right, the Court will deny the defendants' motion for summary judgment on the grounds of qualified immunity.

B. <u>Liability Under Monell</u>

In order to prevail on a claim against a political subdivision, a plaintiff needs to show that the alleged constitutional violation was a result of the Township's policy, custom, or practice.  See <u>Monell v. Dep't of Soc. Servs.</u>, 436

U.S. 658, 691 (1978).  A local government cannot be held responsible on a theory of respondeat superior.  Rather, the plaintiff must show that the government entity itself, through the implementation of a policy or custom, caused the constitutional violation alleged by the plaintiff.  <u>Id.</u>

The defendants argue that the plaintiff has not provided any evidence of a policy which could create the alleged constitutional violation.  At this point, the Court is not sure whether the plaintiff has sufficient evidence to reach a jury on the question of <u>Monell</u> liability.  The Court has not had full briefing on this issue, as the plaintiff made only a short argument about Upper Darby's liability in his unfinished brief.

The plaintiff does, however, point to the deposition of the officers at the scene and Captain Anthony Paparo, who testified very generally about the customs and policies of the Upper Darby police.  The officers testified that their inability to identify the plaintiff contributed to their decision to take him into custody.  Pl. Br., Ex. M (Hanshaw Dep.) at 46; Ex. N (Kane Dep.) at 46.  Captain Paparo testified generally that failure to present identification allowed the officers to take the plaintiff into custody.  Ex. AB (Paparo Dep.) at 33-35.  It is possible that this is evidence of a custom or practice which could support <u>Monell</u> liability.  These statements, however, may

refer only to the officers' claimed inability to determine if the plaintiff was the robbery suspect.

Therefore, the Court will deny the defendants' motion for summary judgment on the issue of Monell liability without prejudice to the defendants' ability to raise the argument later in the case.

An appropriate order will issue.